**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 15 |
| Thentia Global Systems Inc., *et al.* | Case No. 26-10222 (CTG) |
| Debtors in a Foreign Proceeding.[1] | Joint Administration Requested |

**DECLARATION OF DARREN CROCKER IN SUPPORT OF (I) CHAPTER 15 PETITIONS FOR RECOGNITION OF FOREIGN PROCEEDING, (II) MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF PROVISIONAL AND FINAL RELIEF IN AID OF FOREIGN PROCEEDING, AND (III) CERTAIN RELATED RELIEF**

I, Darren Crocker, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the law of the United States, as follows:

1.  I am a Principal of Grant Thornton Limited ("Grant Thornton"). Grant Thornton was appointed by the Superior Court of Justice (Commercial List) in Ontario, Canada (the "Canadian Court") in the proceeding captioned under Court File No.: CL-26-00000052-0000 (the "Canadian Proceeding") by the Initial Order entered on February 9, 2026 under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") as the foreign representative of Thentia Global Systems Inc. ("TGS") and Thentia USA Inc. ("TUI", and together with TGS, the "Debtors") and is authorized to commence these chapter 15 cases in respect of the Debtors.

---

[1] The Debtors and the last four digits of their U.S. Federal Employer Identification Numbers or other unique identifier are as follows: Thentia Global Systems Inc. (6299) (Ontario Corporation No.); Thentia USA Inc. (5913) (FEIN); Thentia Canada Inc. (8980) (Ontario Corporation No.); Thentia UK Limited (7160) (Company Registration No.); Thentia Payments Canada Inc. (7811) (Ontario Corporation No.); Thentia Consulting Services Canada Inc. (2140) (Ontario Corporation No.); Thentia Quebec Inc. (3851) (Quebec Corporation No.); Thentia Payments USA Inc. (1290) (FEIN); Thentia Consulting Services USA Inc. (6421) (Delaware Corporation No.); and Thentia Europe Limited (7932) (Company Registration No.). The Debtors' mailing address is 60 Adelaide St, Third Floor, Toronto, ON Canada M5C 3E4.

2. In its capacity as Receiver (defined below) Grant Thornton has become well-acquainted with the Debtors' operations, financial circumstances, and restructuring needs. If called to testify as a witness, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. Where I have relied on other sources of information, I have so stated and believe them to be true and accurate. I am authorized to submit this declaration on behalf of the Debtors.

3. Paragraph 52 of the Initial Order, requests that:

> All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the DIP Lender, the Applicants, and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the DIP Lender, the Applicants, and the Monitor and their respective agents in carrying out the terms of this Order, including the Applicants, as the foreign representative for all Applicants (the "Foreign Representative"), to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. § 1501 *et seq*.

Initial Order ¶ 52. The Initial Order further provides that "[t]he Foreign Representative is empowered and authorized … to commence one or more foreign legal proceedings to further the objections of this proceeding, including by way of example and not limitation … ancillary insolvency proceedings in the United States of America … (including Chapter 15 of the United States Bankruptcy Code, Title 11, United States Code, 11 U.S.C. § 1501 *et seq*.) …" *Id.*

4. Contemporaneously with the filing of this declaration, I have caused to be filed, on behalf of the Foreign Representative as authorized foreign representative of the Debtors, petitions for recognition of the Canadian Proceeding in the United States under chapter 15 of title 11 of the United States Code.

5. I have read the papers filed contemporaneously with this declaration, including the *Motion of the Foreign Representative for Entry of Provisional and Final Orders*

*Granting Recognition of Foreign Proceeding and Certain Related Relief under Sections 105(a), 362, 365, 1517, 1519, 1520, and 1521 of the Bankruptcy Code* (the "Recognition Motion"), and believe the statements in those papers to be true and correct to the best of my knowledge based on my investigation.

6. As foreign representative for the Debtors, the Foreign Representative seeks recognition of the Canadian Proceeding as the foreign main proceeding of each of the Debtors, or, in the alternative, as a foreign nonmain proceeding. The Foreign Representative also seeks certain related relief necessary to preserve value and administer these chapter 15 cases.

## OVERVIEW OF THE THENTIA CORPORATE GROUP

A. **Background of the Thentia Group and Receivership**

7. TGS is the parent holding company and directing mind of nine closely integrated subsidiaries located in Canada, the U.S., and Europe, being Thentia Canada Inc., Thentia USA Inc., Thentia Payments USA Inc., Thentia Consulting Services Canada Inc., Thentia Payments Canada Inc., Thentia Consulting Services USA Inc., Thentia UK Limited, Thentia Europe Limited, and Thentia Quebec Inc. (collectively, the "Subsidiaries" and, together with TGS, the "CCAA Applicants").

8. TGS and its Subsidiaries are "GovTech" companies. They develop and provide cloud-based software platforms for government agencies and regulatory bodies to manage licensing, compliance, and related administrative functions. The Debtors' clientele is comprised primarily of public sector organizations and government bodies throughout Canada and the United States.

9. On November 4, 2025, Espresso Capital Ltd. and Espresso Venture Debt LP (collectively, "Espresso") sought an order among other things, appointing Grant Thornton as

3

the receiver and manager of TGS. The order sought did not include the Subsidiaries. Grant Thornton was appointed as interim monitor at the initial return of the application. The balance of the application was adjourned to November 21, 2025.

10. On November 21, 2025, the Honourable Justice Cavanagh granted an order appointing Grant Thornton as the receiver ("Receiver") of TGS pursuant to section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, as amended (the "BIA"), and section 101 of the Courts of Justice Act, R.S.O. 1990, c. C.43 ("Receivership Order").

11. Espresso is the senior secured creditor to the Debtors pursuant to a senior loan and security agreement (the "Senior Loan and Security Agreement") and a junior loan and security agreement (the "Junior Loan and Security Agreement" and, together with the Senior Loan and Security Agreement, the "Loan and Security Agreements"). As of October 14, 2025, it the Debtors were indebted to Espresso in the approximate amount of $20,776,441, including interest and fees.

12. Espresso sought the appointment of the Receiver to address, inter alia, (i) the Debtors' ongoing defaults under the Loan and Security Agreements; (ii) the Debtors' inability to meet payroll obligations; (iii) the liquidity shortfall resulting from the delayed receipt of approximately $1.4 million in anticipated Scientific Research and Experimental Development ("SRED") tax credits; and (iv) the mass furlough of the Debtors' employees, all of which collectively jeopardized the Debtors' going-concern operations and value.

13. The Debtors have now sought CCAA protection to more effectively address a range of destabilizing creditor demands and financial pressures on the Thentia group entities while providing a framework for a Court-supervised restructuring, including a sale process. The

CCAA Applicants require urgent relief to preserve enterprise value and maintain operations while pursuing a restructuring solution for the benefit of stakeholders.

B.     **The Debtors' Background and Corporate Structure**

14.    TGS is a corporation incorporated under the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended (the "CBCA"). TGS' federal corporate profile report indicates that its directors, as of January 8, 2026, were Jamie Weston, Brian Utley, Mark Smith, Sean Brownlee, and Richard Black. The Receiver received resignations from each of Sean Brownlee and Jamie Weston on November 24, 2025, but has not received any formal resignations from Brian Utley, Mark Smith or Richard Black.

15.    TGS directly or indirectly owns 100% of the Subsidiaries, with the exception of Thentia Canada Inc. ("TCI"). Grant Thornton understands that Mr. Black may hold a controlling equity interest in TCI (the "TCI Controlling Interest") and that he has pledged the TCI Controlling Interest to Espresso as security for the CCAA Applicants' debt obligations to Espresso. On November 11, 2025, Espresso delivered a notice to Mr. Black that Events of Default occurred under the Loan and Security Agreements (defined below). The Receiver understands that Espresso now takes the position to enforce the pledge in respect of the TCI Controlling Interest.

16.    Of the Subsidiaries, TCI and TUI (together, the "Operating Entities") are the entities engaged in active operations related to the provision of software as a service ("SaaS") within the government technology space ("GovTech").

17.    TCI is domiciled and has its registered office located in the Province of Ontario. TUI is a corporation incorporated pursuant to the laws of the State of Delaware and is domiciled in the United States.

5

18. TGS has no active business operations. TGS' primary function is to carry out fundraising and financial administrative activities for the Subsidiaries and to hold the shares of the Operating Entities.

19. Thentia Payments Canada Inc., Thentia Consulting Services Canada Inc., Thentia Quebec Inc., Thentia Payments USA Inc., Thentia Consulting Services USA Inc., and Thentia Europe Limited are inactive and wholly owned subsidiaries of TGS. Thentia UK Limited ("TUK") is a former subsidiary that was dissolved by the UK's Companies House on September 9, 2025.

20. The Debtors operate along with the other Subsidiaries as a single enterprise despite comprising ten individual companies across Canada, the U.S., and Europe. The assets, liabilities, and business function of these entities are very much intertwined.

21. The Operating Entities provide cloud-based applications which are licensed on a subscription basis to governmental and regulatory agencies. Through the provision of SaaS, customers are able to manage their own regulatory requirements in one centralized and uniquely tailored platform.

22. Operating revenues and expenditures, and the majority of business operations, flow through the Operating Entities. The Operating Entities also administer payroll to the Debtors' employees. The Debtors do not occupy any leased or owned physical premises. Employees typically work in a remote setting.

i. *Employees*

23. On October 10, 2025, the Debtors furloughed approximately 70% of their employees, including key members of the C-suite, such as the Chief Financial Officer, the Chief Operating Officer, and the Chief Executive Officer. Only 20 employees remain.

24. Prior to the recent furloughs, the Debtors employes approximately 72 individuals across a range of critical operational functions, including customer success personnel responsible for frontline client support, implementation specialists tasked with delivering and configuring the CCAA Applicants' regulatory software (typically requiring approximately 1,000 hours per deployment), as well as members of senior management and other administrative staff.

    ii. *Litigation and Disputes*

25. Prior to filing the CCAA Application, certain of the Thentia group entities were subject to litigation cost and risk arising from multiple legal proceedings either initiated or threatened, including lawsuits, demands, and aggressive collection efforts by employees, vendors and other stakeholders.

26. The Thentia entities are subject to approximately 30 active or threatened legal proceedings, including:

    a. Eight active lawsuits pending in both Canada and the United States with aggregate amounts claimed of approximately $2,252,743 (CAD) and $504,858 (USD);

    b. Ten vendor-related claims (excluding those that have become lawsuits) consisting of collections demands and threatened legal action regarding outstanding payments; and

    c. Ten employee-related claims (excluding those that have become lawsuits).

27. The progression of adverse claims and litigation at this time threatens to materially and negatively affect the Debtors' financial position and future viability.

    iii. *Creditors*

28. The Applicants have a number of secured creditors with registered security interests over their property, including Espresso.

a. *Indebtedness to Espresso*

29. I understand that Espresso is the CCAA Applicants' senior secured creditor. As a result of the CCAA Applicants' indebtedness to Espresso in connection with the Loan and Security Agreements, and the CCAA Applicants' breaches thereunder, Espresso entered into a forbearance agreement with the CCAA Applicants on July 18, 2024 (the "Forbearance Agreement"). The Forbearance Agreement was amended fourteen times, most recently to extend the maturity date of the Loan and Security Agreements to October 31, 2025.

30. Espresso issued a demand and notice of default and delivered a Notice of Intention to Enforce Security pursuant to section 244(1) of the BIA. Thentia failed to repay the indebtedness upon the maturity of the loans on October 31, 2025.

31. As noted above, Espresso subsequently sought and obtained the Receivership Order.

b. *Investments by TTA, FAV, and SMC*

32. The CCAA Applicants' shareholders and investors, beyond Espresso, include First Ascent Ventures ("FAV"), TTA Investments LLC ("TTA"), and Spring Mountain Capital GP, LLC ("SMC", collectively, the "Investors").

33. The Investors assert that they have invested funds in the CCAA Applicants on both a secured and unsecured basis and as both debt and equity.

iv. *SRED Tax Credits*

34. Historically, the CCAA Applicants have relied on SRED tax credit refunds as a significant source of operating liquidity. The CCAA Applicants anticipated receiving approximately $1.4 million in SRED refunds in early October 2025; however, in late September the CCAA Applicants determined that these refunds would be delayed until mid-December 2025.

35. This deferral materially reduced near-term cash availability and contributed to an urgent liquidity shortfall, including the CCAA Applicants' inability to fund payroll on October 15, 2025 without additional borrowing. The delay of the SRED refund had been a direct factor in the CCAA Applicants' deteriorating financial position and the resulting series of defaults under the Loan and Security Agreements.

C. **The Debtors' Need for Protection Pursuant to the CCAA and Chapter 15 of the Bankruptcy Code**

36. Beginning in or about July 2024, coinciding with the CCAA Applicants initial forbearance agreement with Espresso, the CCAA Applicants experienced a series of escalating operational and financial challengers, each of which has strained liquidity and impaired the CCAA Applicants' ability to continue operating in the ordinary course, including among other things:

   a. An inability to fund payroll from revenue, thereby requiring multiple shareholder advances to meet payroll obligations;

   b. Persistent defaults in connection with the Loan and Security Documents and the Forbearance Agreement;

   c. A significant liquidity shortfall caused by the delay of the SRED tax credit refunds;

   d. The furlough of the majority of employees, including key operational and senior personnel necessitated by acute cashflow shortages; and

   e. Increasing exposure to litigation and collection efforts initiated by employees, vendors and other stakeholders.

37. The cumulative effect of these challenges has been severe. The resulting uncertainty and instability has impaired the CCAA Applicants' ability to continue operating as a going concern.

38. The CCAA Applicants are cash flow and balance sheet insolvent and have liabilities well in excess of $5 million.

39. The Thentia group entities are facing myriad financial stresses, creditor demands and litigation threats across multiple jurisdictions. The CCAA Applicants require a stay of proceedings pursuant to the CCAA and Chapter 15 of the Bankruptcy Code to restore operational stability and to maintain a viable *status quo* conducive to the design and implementation of a restructuring strategy for the benefit of the CCAA Applicants' creditors and other stakeholders.

## RECOGNITION AND OTHER RELIEF REQUESTED

A.  **The Recognition Motion**

40. I am informed that in order to be recognized as a "foreign main proceeding," a proceeding must be pending in the country where the debtor has its "center of main interests," which I understand to be the functional equivalent of a headquarters, principal place of business, or "nerve center." I believe that the Canadian Proceeding meets this requirement. I believe the Chapter 15 Debtors' center of main interest is Ontario, Canada because, among other things:

   a. TGS, the company's ultimate parent company (which directly or indirectly owns and/or controls all of the Subsidiaries) is domiciled in Canada;

   b. One of the primary Operating Entities, being TCI, has its registered head office located in Toronto, Ontario;

   c. The payments and consulting services of the CCAA Applicants play supporting roles to the main businesses operated by the Operating Entities;

   d. The CCAA Applicants' material lending arrangements are governed by Canadian law, and Espresso, the CCAA Applicants' senior secured creditor, is Canadian;

e. The CCAA Applicants' material financial and strategic management is headquartered in Ontario, with key decision making also being conducted in Ontario;

f. Strategic and customer relations are managed within Ontario;

g. The Company's auditors and corporate counsel are all Canadian and domiciled in Canada; and

h. The majority of the CCAA Applicants' employees and the majority of executive management are located in Canada.

41. In addition to seeking recognition on a final basis, the Foreign Representative also requests certain provisional relief. Pending recognition of the Canadian Proceeding, the Foreign Representative seeks provisional relief to enjoin collection efforts against the Debtors and their assets, as well as to protect potentially valuable contractual relationships. This relief is necessary to avoid immediate and irreparable harm to the Debtors and their assets if U.S. creditors and contract parties begin a "race to the courthouse" or resort to other self-help remedies. The Debtors will not have the resources to restructure and will not be able to maintain orderly bankruptcy process if they are forced to deal with creditors and litigation in the United States in individual state courts.

42. It is also necessary for all actions against the Debtors and the Debtors' management, including actions against the directors and officers in their capacity as such, to be stayed on a provisional basis, all as set forth in the Initial Order. This stay shall include the litigation filed in the 459th District Court of Travis County, Texas, styled as *First Ascent Ventures II LP, Inc., et al. v. Brian Utley, et al.*, under case number D-1-GN-25-011008. The Debtors'

directors and officers are essential to managing the Debtors' business and ability to implement a successful restructuring.

43. To provide the necessary funding to sustain operations, the Debtors have entered into DIP facility (the "<u>DIP Facility</u>") pursuant to the terms of that certain DIP Financing Term Sheet, dated February 9, 2026 (the "<u>DIP Term Sheet</u>") between the Debtors as borrowers, and Espresso Venture Debt LP (the "<u>DIP Lender</u>") as lender. The DIP Lender has agreed to provide the DIP Facility upon the terms outlined in the DIP Term Sheet. The terms of the DIP Term Sheet were negotiated, proposed and entered into by the Debtors and the DIP Lenders without collusion, in good faith and at arm's length. Specifically, the DIP Facility provides, among other things, that it is to be used to finance the Debtors' working capital requirements, other general corporate purposes, accrued interest, expenses and capital expenditures. The terms and conditions of the DIP Facility are more fully detailed in the DIP Term Sheet.

44. This provisional relief is consistent with the Initial Order, which, among other things, stays all creditor collection actions against the Debtors, their assets and their directors and officers and prohibits contract counterparties from terminating contracts with the Debtors.

45. For the foregoing reasons, I believe that the provisional relief requested is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

B. **<u>The Notice Procedures Motion</u>**

46. The Foreign Representative has also filed a motion requesting that the Court schedule a final recognition hearing and approve related noticing procedures (the "<u>Notice Procedures Motion</u>"). I can attest that the Debtors have over 43 creditors, potential creditors, and other parties in interest, all of whom need to be provided with, among other things, notice of the provisional order, the proposed final order, the recognition objection deadline, and the recognition

hearing. The Foreign Representative has prepared a form of notice advising of these and related matters (the "Recognition Hearing Notice"), a copy of which is annexed to the Notice Procedures Motion.

47. Under the facts and circumstances of the Debtors' Chapter 15 Cases, I submit that service of the Recognition Hearing Notice in the manner proposed in the Notice Procedures Motion will provide those parties identified as the Notice Parties in the Notice Procedures Motion with due and sufficient notice of the relief requested in the Recognition and Relief Motion and associated objection deadline and hearing dates.

48. Therefore, I believe that the relief requested in the Notice Procedures Motion is necessary and appropriate and is in the best interests of the Debtors, their creditors, and other parties in interest.

C.     **The Joint Administration Motion**

49. The Foreign Representative has also filed, contemporaneously herewith, (i) a motion seeking entry of an order directing joint administration of these Chapter 15 Cases for procedural purposes only ("Joint Administration Motion").

50. I believe that joint administration of these Chapter 15 Cases is warranted because the Debtors' financial affairs and business operations are closely related, and because it will ease the administrative burden of these cases on the Court and interested parties. I can confirm that the Foreign Representative anticipates that the various notices, motions, hearings, orders, and other pleadings in these cases will affect all of the Debtors.

51. Therefore, I believe that the relief requested in the Joint Administration Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties in interest.

52. For additional background, I have attached to this declaration a true and correct copy of the full Application Record filed with the Canadian Court to commence the Canadian Proceeding.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 17, 2026                             */s/ Darren Crocker*
    Edmonton, Alberta                               Darren Crocker